# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| SHARON ANN VAUGHT, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br>vs.<br>CAPITAL MANAGEMENT SERVICES LP,<br><br>      Defendant. | Case No.: 20-cv-1105<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Sharon Ann Vaught is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant Capital Management Services, LP, ("CMS") is a debt collection agency with its principal offices located at 698 ½ South Ogden Street, Buffalo, New York 14206.

7. CMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CMS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. CMS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

### *April 4, 2020 Account Statement and April 6, 2020 Letter*

10. On or about April 4, 2020, Barclays Bank Delaware ("Barclays") mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to Barclays and associated with Plaintiff's "Barclaycard Rewards Mastercard" credit card account. A copy of this account statement is attached to this complaint as Exhibit A.

11. Upon information and belief, the debt referenced in Exhibit A is a personal consumer credit card account, used only for personal, family, and household purposes.

12. Exhibit A contains the following:

2

```
Payment Information
Statement Balance:                                          $3,417.09
Minimum Payment Due:                                          $616.00
Payment Due Date:                                             05/01/20
```

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.00.

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 14 years | $7,685.00 |

▸ If you would like information about credit counseling services, please call 800-570-1403.

13.     Exhibit A states that, as of April 4, 2020, Plaintiff's account had a "Statement Balance" of $3,417.09 and a minimum payment of $616.00, which was due on May 1, 2020.

14.     On or about April 6, 2020, Defendant mailed Plaintiff a debt collection letter regarding an alleged Barclays debt. A copy of this account statement is attached to this complaint as Exhibit B.

15.     Upon information and belief, the alleged debt referenced in Exhibit B is the same alleged debt referenced in Exhibit A.

16.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by Defendant to attempt to collect alleged debts.

18.     Exhibit B was the first letter that Defendant sent to Plaintiff with respect to this alleged debt.

3

19. <u>Exhibit B</u> contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector send the consumer along with, or within five days of, their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if applicable and mail you a copy of such verification or judgment. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different than the current creditor.

20. <u>Exhibit B</u> also states:

> This company has been engaged by BARCLAYS BANK DELAWARE to resolve your delinquent debt. As of the date of this letter, you owe $3417.09. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For more information, write the undersigned or call 1-877-335-6949.

21. <u>Exhibit B</u> states that Plaintiff "owes" $3,417.09 but does not disclose that only a portion of the $3,417.09 balance was actually "due" as of the date of <u>Exhibit B</u>.

22. An unsophisticated consumer would not know whether Defendant or the creditor had accelerated the balance and would not be able to determine whether she could bring the account current by tendering the minimum payment stated in <u>Exhibit A</u>.

*June 4, 2020 Account Statement and June 5, 2020 Letter*

23. On or about June 4, 2020, Barclays mailed another account statement to Plaintiff regarding the same alleged debt. A copy of this account statement is attached to this complaint as <u>Exhibit C</u>.

24. <u>Exhibit C</u> contains the following:

4

| Payment Information | |
|---|---|
| Statement Balance: | $3,631.92 |
| Minimum Payment Due: | $900.22 |
| Payment Due Date: | 07/01/20 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.00.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay… | You will pay off the balance shown on this statement in about… | And you will end up paying an estimated total of… |
|---|---|---|
| Only the minimum payment | 13 years | $7,768.00 |

▸ If you would like information about credit counseling services, please call 800-570-1403.

25. Exhibit C states that, as of June 4, 2020, Plaintiff's account had a "Statement Balance" of $3,631.92, with a "Minimum Payment Due" of $900.22 and "Payment Due Date" of July 1, 2020.

26. On or about June 5, 2020 Defendant mailed Plaintiff a debt collection letter regarding the same alleged debt. A copy of this account statement is attached to this complaint as Exhibit D.

27. Upon information and belief, the alleged debt referenced in Exhibit D is the same alleged debt referenced in Exhibits A-C.

28. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

29. Upon information and belief, Exhibit D is a form debt collection letter, generated by computer, and used by Defendant to attempt to collect alleged debts.

30. Exhibit B states:

```
Original Creditor: BARCLAYS BANK DELAWARE
Current Creditor: BARCLAYS BANK DELAWARE
Description: Barclaycard
Account #: 1971
Amount of Debt: $3562.37
AMOUNT ENCLOSED:     _____
Current Address:     _____
_____
Current Phone #:     _____
Minimum Payment Due: $139.45
```

31. Exhibit D, mailed on June 5, 2020, the day after Exhibit C, states that the "Amount of Debt" is $3562.37 and the "Minimum Payment Due" is $139.45.

32. The balance and minimum payment amounts stated in Exhibit D are inconsistent with the balance and minimum payment amounts stated in Exhibit C.

33. A debt collector materially misleads consumers when it attempts to collect the wrong amount or describes an amount as the "minimum payment" when it is actually less than the minimum payment.

34. If a consumer tendered the "Amount of Debt" stated in Exhibit D, the account would not be paid in full.

35. If a consumer tendered the "Minimum Payment Due" stated in Exhibit D, the account would not be brought current. Indeed, the account would remain delinquent and the payment could not delay the creditor "charging off" the account as a matter of law because banking regulations require creditors to charge off delinquent credit card accounts after 180 days unless the consumer enters into a properly established workout program so the account can be re-aged. *See* Notices Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903, 36903-04 (June 12, 2000).

36. Plaintiff reviewed Exhibits A-D.

6

Case 2:20-cv-01105-LA     Filed 07/20/20     Page 6 of 16     Document 1

37. Plaintiff was confused and misled by Exhibits B and D.

38. The unsophisticated consumer would be confused and misled by Exhibits B and D.

39. Plaintiff had to spend time and money investigating Exhibits B and D.

### *The FDCPA*

40. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in

fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

41. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

8

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

42. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters, including misrepresentations of the character, amount or legal status of any debt, have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); see also *Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

43. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

44. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

45. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

46. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

48. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

49. The debt collector must state the amount of the debt in a non-confusing manner. *Janetos*, 825 F.3d at 323.

### *The WCA*

50. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

51. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

52. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

53. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

54. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

55. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

56. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

57. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

58. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

59. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

60. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

61. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

12

## COUNT I – FDCPA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Exhibits B and D misrepresented the amount, character, and legal status of the debt that Defendant was collecting.

64. Exhibit B attempted to collect the entire balance of the account without disclosing that the debt had not been accelerated so only a portion of the balance was actually due when Exhibit B was mailed.

65. Exhibit B falsely claimed an existing right to demand immediately payment of the entire balance of the account.

66. Exhibit D misrepresented the total balance and minimum payment amounts.

67. Exhibit D falsely claimed that Defendant and/or the creditor could prevent the account from charging off upon the consumer's payment of a minimum payment that was substantially less than would actually be required to prevent the account from charging off.

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Exhibits B and D misrepresented the amount, character, and legal status of the debt that Defendant was collecting.

71. Exhibit B attempted to collect the entire balance of the account without disclosing that the debt had not been accelerated so only a portion of the balance was actually due when Exhibit B was mailed.

72. Exhibit B falsely claimed an existing right to demand immediately payment of the entire balance of the account.

73. Exhibit D misrepresented the total balance and minimum payment amounts.

74. Exhibit D falsely claimed that Defendant and/or the creditor could prevent the account from charging off upon the consumer's payment of a minimum payment that was substantially less than would actually be required to prevent the account from charging off.

75. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of two classes.

77. Class I ("False Acceleration Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent an account statement by Barclays in the form of Exhibit A to the complaint in this action, (c) and subsequently were sent a letter in the form of Exhibit B to the complaint in this action, (d) where the letter in the form of Exhibit B was mailed prior to the "Minimum Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between July 20, 2019 and July 20, 2020, inclusive, (g) and was not returned by the postal service.

78. Class II ("False Minimum Payment Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a letter in the form of Exhibit D to the complaint in this action, (c) where the "Minimum Payment" amount in stated in the letter in the form of Exhibit D was calculated according to the same formula as used in calculating the "Minimum Payment" stated in Exhibit, and (d) the alleged debt was incurred for personal, family or household purposes, (e) and the letter in the form of Exhibit D was mailed between July 20, 2019 and July 20, 2020, inclusive, (f) and was not returned by the postal service.

14

79. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

80. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits B and/or D</u> violate the FDCPA and/or the WCA.

81. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

82. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

83. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

84. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: July 20, 2020

                                  **ADEMI & O'REILLY, LLP**

                 By:    /s/ Mark A. Eldridge
                          John D. Blythin (SBN 1046105)
                          Mark A. Eldridge (SBN 1089944)
                          Jesse Fruchter (SBN 1097673)
                          Ben J. Slatky (SBN 1106892)
                          3620 East Layton Avenue
                          Cudahy, WI 53110
                          (414) 482-8000
                          (414) 482-8001 (fax)
                          jblythin@ademilaw.com
                          meldridge@ademilaw.com
                          jfruchter@ademilaw.com
                          bslatky@ademilaw.com